UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEBRA BEST and JEFFERY BEST,

        Plaintiff,

v.

COUNTY OF ERIE,
ERIE COUNTY DEPARTMENT OF SOCIAL SERVICES

        Defendant.

**AMENDED**
**VERIFIED COMPLAINT**

---

Plaintiffs DEBRA BEST and JEFFERY BEST, by and through their attorneys Tiveron Law, PLLC, as and for their Complaint against Defendants Erie County and Erie County Department of Social Services, alleges as follows:

1. Plaintiffs Debra Best and Jeffery Best ("Mr. Best" or "Mrs. Best" or "Plaintiffs") were and are residents of the County of Erie and State of New York, and currently reside at 147 Elmwood Avenue, Depew, New York 14043.

2. At all times relevant herein, Defendant Erie County was and is a government municipality with attorney's offices located at 95 Franklin Street, Suite 1634, Buffalo, New York 14202.

3. At all times relevant herein, Defendant Erie County Department of Social Services ("DSS" or "the Agency") was and is an Erie County government agency with principal offices located at 95 Franklin Street, 8th Floor, Buffalo, New York 14202.

4. This court has subject matter jurisdiction over the claim advanced pursuant to 28 U.S.C. § 1331.

5. Pursuant to 28 U.S.C. § 1367, the Court has supplemental and pendent subject matter jurisdiction over the State law claims asserted by Plaintiff because the State law claims are so related to the other claims in this action over which the Court has original subject matter

1

jurisdiction, and arise from a common nucleus of operative facts, that the State law claims form part of the same case or controversy under Article III of the United States Constitution (*U.S. Const. art. III*).

6. This action properly lies in the Western District of New York, pursuant to 28 USCS §1391(b) because the claim arose in this judicial district and the defendants do business in Erie County.

## RELEVANT PROCEDURAL BACKGROUND

7. As required by the General Municipal Law § 50(e), Plaintiffs served a Notice of Claim upon the Municipal Defendants on or about March 24, 2022. A copy of Plaintiffs' Notice of Claim is attached hereto as **Exhibit A**.

8. On January 13, 2023, Defendants filed a Notice to Remove this action from Erie County Supreme Court to the United States District Court for the Western District of New York. A copy of Defendants' Notice of Removal is attached hereto as **Exhibit B**.

## FACTUAL BACKGROUND

9. M.B. is the Plaintiffs' niece. The Plaintiffs became Article 6 custodians of M.B. and her sister after she was placed into foster care in 2011. The sisters were placed in foster care due to neglect and abuse by her biological mother. (See **Exhibit C** and **Exhibit D** p. 3 ¶ 6).

10. In 2014, M.B. began to experience emotional and mental health issues. She was hospitalized after threatening to kill Mrs. Best that same year. (See **Exhibit D** p. 17 ¶ 2).

11. M.B. has a history of lying, cutting herself, stealing, running away, and falsely reporting incidents, including a rape by a classmate. She has kicked Mrs. Best, hit Mrs. Best, and bent Mrs. Best's finger back shortly after Mrs. Best had surgery on the finger (See **Exhibit D** p. 3 ¶ 7).

12. The Plaintiffs continuously engaged M.B. with counselors, in-house services, social skill building sources, and psychiatric care. (See **Exhibit D** p. 3 ¶ 8).

13. M.B. participated in Tai Kwon Do and attended church regularly with the Plaintiffs. (See **Exhibit D** p. 3 ¶ 8).

14. On May 17, 2015, Depew Police were called to the Mr. and Mrs. Best's home after M.B. became "out of control." While police were at the house, Mrs. Best told them, "There has been an ongoing and increasing issue with [M.B.'s] behavior." Mrs. Best told police M.B. threatened to "get her and [A.B.] (her sister) in their sleep." (See **Exhibit E**).

15. M.B. has had numerous psychiatric admissions as of 2019. She was diagnosed with Oppositional Defiant Disorder (ODD) and Post Traumatic Stress Disorder (PTSD). (See **Exhibit D** p. 3 ¶ 8).

16. On September 14, 2018, Mr. Best called Depew Police for a welfare check on M.B. Mr. Best said M.B. was depressed and broke a mirror and cut herself. (See **Exhibit F**).

17. Depew Police were dispatched to the Mr. and Mrs. Best's home on June 16, 2019 for a welfare check after Buffalo 911 received text messages from a female. Officers spoke with M.B. and determined she was fine. (See **Exhibit G**).

18. Mrs. Best reported M.B. missing to Depew Police on October 17, 2019. M.B. was located and returned home within two hours. (See **Exhibit H**).

19. Depew Police Detective Scott Hossfeld ("Hossfeld") had contact with the family about a dozen times within approximately a year and a half. (See **Exhibit D** p. 16 ¶ 2).

20. Hossfeld described M.B. as a liar, exaggerator, and generally troubled youth with unpredictable anger. (See **Exhibit D** p. 16 ¶ 2).

21. On December 6, 2019, Hossfeld filed a complaint with Depew Police stating that M.B. had "unauthorized equipment" on her cell phone. (See **Exhibit I**).

3

22. On December 12, 2019, Depew Police responded to a call at the Plaintiffs' home after M.B. became violent and punched glass in her room. M.B. did this after the Plaintiff's confronted her about naked videos and pictures of herself on a phone the Plaintiffs did not know she possessed. (See **Exhibit D** p. 3-4 ¶ 9 and **Exhibit J**).

23. Hossfeld reported to the scene off duty because he worked with M.B. as a school resource officer. (See **Exhibit D** p. 4 ¶ 9 and **Exhibit J**).

24. M.B. accused Mr. Best of choking her. Hossfeld did not see any red marks on M.B.'s neck area. (See **Exhibit D** p. 4 ¶ 10 and **Exhibit J**).

25. After Hossfeld calmed M.B. down, she was transported to Erie County Medical Center's Comprehensive Psychiatric Emergency Program (CPEP). CPS was alerted to the situation and became involved. (See **Exhibit D** p. 4 ¶ 10 and **Exhibit J**).

26. Criminal mischief charges stemming from the glass incident were eventually filed against M.B. in Family Court. (See **Exhibit D** p. 4 ¶ 10 and **Exhibit J**).

27. When a CPS caseworker met with M.B. at the CPEP unit on December 13, 2019, M.B. didn't have any suspicious bruises or marks. She had superficial cuts on her hand from punching glass. (See **Exhibit D** p. 4 ¶ 11).

28. M.B. told the caseworker and hospital staff that she did not want to go home with the Plaintiffs and wanted to live with her mother. (See **Exhibit D** p. 4 ¶ 12).

29. On December 14, 2019, before M.B. was discharged from CPEP, an Agency team leader arranged for M.B. to go to Compass House. (See **Exhibit D** p. 4 ¶ 13).

30. On December 14, 2019, the caseworker visited the Plaintiffs' home to discuss M.B.'s violent and risky/sexual behaviors and her refusal to take her medications or maintain proper hygiene. (See **Exhibit D** p. 4 ¶ 14).

4

31. The caseworker asked the Plaintiffs for suggestions as to where M.B. could go because she did not want to return home. (See **Exhibit D** p. 4 ¶ 15).

32. The Plaintiffs told the caseworker they didn't know of family that would take M.B. because of her behavior. They agreed M.B. would stay at Compass House. (See **Exhibit D** p. 5 ¶ 15).

33. Mr. Best brought clothes to Compass House for M.B. The Plaintiffs requested M.B. get the help she needs for her behaviors as their attempts have failed. (See **Exhibit D** p. 5 ¶ 15).

34. The caseworker visited M.B. at Compass House on December 16, 2019, and M.B. reiterated she was not going home or back to the hospital. (See **Exhibit D** p. 5 ¶ 17).

35. M.B.'s school guidance counselor said M.B. is a manipulative, constant liar. The guidance counselor said the Plaintiffs were appropriate. (See **Exhibit D** p. 5 ¶ 18).

36. On December 17, 2019, M.B. still refused to go back home. The caseworker advised M.B. to stay at Compass House until there was an alternative plan. (See **Exhibit D** p. 5 ¶ 19).

37. Just before midnight on December 17, 2019, Compass House called Mrs. Best to report M.B. had run away. Mrs. Best immediately reported her missing to police. (See **Exhibit D** p. 6 ¶ 22 and **Exhibit K**).

38. At approximately 2 a.m. on December 18, 2019, the Plaintiffs found M.B. alone at a gas station in downtown Buffalo, New York. M.B. was with a man who was about 40 years old. (See **Exhibit D** p. 6 ¶ 22 and **Exhibit K**).

39. M.B. was crying and scared but immediately began verbally assaulting the Plaintiffs. (See **Exhibit D** p. 6 ¶ 22 and **Exhibit K**).

40. Mr. and Mrs. Best returned M.B. to Compass House. (See **Exhibit D** p. 6 ¶ 22 and **Exhibit K**).

5

41. On December 18, 2019, the caseworker visited M.B. at Compass House. The caseworker advised M.B. to stay put at Compass House until a final plan was in place for her. (See **Exhibit D** p. 6 ¶ 23).

42. On December 18, 2019, the caseworker contacted M.B.'s biological mom, advising her to file a petition in family court if she wished to take custody of her. (See **Exhibit D** p. 6 ¶ 25).

43. On December 18, 2019, the school guidance counselor received a phone call from M.B. stating she wasn't coming back to school because she is living with her biological mother. (See **Exhibit D** p. 6 ¶ 26).

44. On December 19, 2019, the caseworker advised Mrs. Best that the parties could enter a VPA. Mrs. Best was informed that she needed to stay compliant with services in the hope of reunification with M.B. (See **Exhibit D** p. 7 ¶ 29).

45. On December 20, 2019, a DSS attorney asked the caseworker if she was filing a neglect petition or not. The caseworker said she was not filing a neglect petition, and that a VPA was "most appropriate." (See **Exhibit D** p. 7 ¶ 30).

46. On December 20, 2019, the Agency left a message with the Plaintiffs attorney confirming that a VPA was in the works. (See **Exhibit D** p. 7 ¶ 31).

47. On December 20, 2019, the caseworker received an email from the Agency legal team informing her that the Plaintiffs attorney confirmed that the Plaintiffs wanted to proceed with a VPA. (See **Exhibit D** p. 7 ¶ 32).

48. Legal advised the Plaintiffs attorney that the proceeding could turn into a neglect issue if the Plaintiffs did not do what they needed to do. (See **Exhibit D** p. 7 ¶ 32).

49. On December 21, 2019, Mrs. Best reported M.B. missing after Compass House left a voicemail on their home phone saying M.B. left Compass House. (See **Exhibit L**).

50. On December 22, 2019, M.B. was located and brought back to Mr. and Mrs. Best's house. Hossfeld was present and decided to charge M.B. with criminal mischief stemming from the December 12, 2019 incident at the home. M.B. was transported back to Compass House. (See **Exhibit L**).

51. On December 23, 2019, Compass House reported to the caseworker that M.B. was not following the rules and returned with hickeys on her neck after being out over the weekend. The caseworker explained the Agency was still trying to secure proper placement. (See **Exhibit D** p. 7 ¶ 33).

52. On December 23, 2019, Mrs. Best advised the caseworker that M.B. had left Compass House over the weekend and the police brought her to the Plaintiffs' home. She told them M.B. was charged with criminal mischief stemming from the December 12, 2019, incident at home. (See **Exhibit D** p. 7 ¶ 34).

53. The Plaintiffs brought M.B. back to Compass House and advised the caseworker of what was going on. M.B. was belligerent the entire time. (See **Exhibit D** p. 7 ¶ 34).

54. The caseworker said that if Compass House kicked M.B. out, the Plaintiffs needed to take her home until placement is secured. (See **Exhibit D** p. 8 ¶ 34).

55. On December 23, 2019, the caseworker left a voicemail at a residential treatment facility to ask about the referral the Agency sent over for M.B. the week prior. (See **Exhibit D** p. 8 ¶ 36).

56. On December 24, 2019, the caseworker left a message for M.B.'s care coordinator to ask if respite care could be arranged for her. (See **Exhibit D** p. 8 ¶ 37).

57. The Agency contacted DSS in the county where M.B.'s mother lived to see if the household was suitable for M.B. or if there were any relatives who could take her in. (See **Exhibit D** p. 8 ¶ 38).

58. On December 24, 2019, Compass House informed the Agency that M.B. was using the "N" word, making other residents uncomfortable and prompting them to leave Compass House. (See **Exhibit D** p. 8 ¶ 39).

59. M.B. also punched another child in the face, and Compass House refused to keep her any longer. (See **Exhibit D** p. 8 ¶ 39).

60. The caseworker advised Compass House to call the Plaintiffs to pick up M.B. (See **Exhibit D** p. 8 ¶ 39).

61. On December 24, 2019, the caseworker told Mrs. Best to pick up M.B. because she was kicked out of Compass House. (See **Exhibit D** p. 8 ¶ 40).

62. Mr. Best went to Depew Police to state he was not sure what to do about M.B. on December 24, 2019. Hossfeld was notified and spoke with CPS. (See **Exhibit M**).

63. At first, Mrs. Best refused to pick up M.B., but then her husband went to Compass House at 11 a.m. to pick her up. (See **Exhibit D** p. 9 ¶ 40).

64. The Plaintiffs' cousin agreed to be a temporary resource for M.B. if needed. (See **Exhibit D** p. 9 ¶ 42).

65. The Plaintiffs had M.B. at home on Christmas Day. (See **Exhibit D** p. 9 ¶ 43).

66. M.B. verbally accosted her grandfather and uncle. Police were called, but she was not arrested. (See **Exhibit D** p. 9 ¶ 43 and **Exhibit N**).

67. When Mrs. Best tried to hug M.B. later that day, she punched Mrs. Best in the jaw with a closed fist. (See **Exhibit D** p. 9 ¶ 44 and **Exhibit O**).

68. The police were called again, and a harassment report was made. (See **Exhibit D** p. 9 ¶ 44 and **Exhibit O**).

69. Once M.B. calmed down, the family went to the grandmother's house. (See **Exhibit D** p. 9 ¶ 45).

70. M.B. verbally assaulted her grandmother and uncle, and a few hours later, she ran away. (See **Exhibit D** p. 9 ¶ 45).

71. Mr. and Mrs. Best searched for M.B. and reported her missing to the police. (See **Exhibit D** p. 9 ¶ 45 and **Exhibit P**).

72. She was not immediately located. (See **Exhibit D** p. 9 ¶ 45).

73. The police returned M.B. to the Plaintiffs on or about December 27, 2019. (See **Exhibit D** p. 9 ¶ 47 and **Exhibit P**).

74. The Plaintiffs brought M.B. to her probation officer on December 27, 2019, concerning the criminal mischief charge stemming from the December 12, 2019, incident. (See **Exhibit D** p. 9 ¶ 48).

75. The probation officer recommended that M.B. not go home with the Plaintiffs. (See **Exhibit D** p. 9 ¶ 48).

76. The caseworker and the Plaintiffs were concerned about M.B. returning home, and M.B. articulated that she did not want to go home. (See **Exhibit D** p. 9 ¶ 48).

77. When the caseworker and probation officer asked the Plaintiff's why they did not want to take M.B. home, the Plaintiffs responded they are afraid of her. (See **Exhibit D** p. 10 ¶ 48).

78. The Plaintiffs' cousins took M.B. on December 28, 2019, and December 29, 2019, at the Agency's request. (See **Exhibit D** p. 10 ¶ 49).

79. The Plaintiffs expressed they did not think this was safe because there were electronics at the house; However, the Agency made the plan for M.B. to go to the cousins anyway. (See **Exhibit D** p. 10 ¶ 49).

80. The Plaintiffs drove M.B. to the cousins and made sure she didn't miss her counseling appointment on December 28, 2019. (See **Exhibit D** p. 10 ¶ 49).

81. The Agency picked up M.B. and brought her to a residential care facility on December 30, 2019. (See **Exhibit D** p. 10 ¶ 50).

82. The Plaintiffs were unaware that the Agency filed a Neglect Petition on December 24, 2019, which requested the Agency be granted supervision. It was amended on December 31, 2019, for removal of M.B. (See **Exhibit D** p. 10 ¶ 51).

83. The Agency had the burden of proving at a hearing that maltreatment occurred. SSL § 422(8) and 97-LCM-58. (See **Exhibit D** p. 12 ¶ 2).

84. To meet this burden, the Agency is required to prove by a fair preponderance of the evidence each element of a three-prong test: (1) the child's physical, mental, or emotional conditions was impaired, or was in imminent danger of becoming impaired; (2) the parent or custodian failed to exercise a minimum degree of care under the circumstances in question; and (3) the parent's or custodian's failure to exercise the requisite degree of care caused, or threatened, the impairment of the child's condition. (See **Exhibit D** p. 12 ¶ 2).

85. A hearing was held in person on March 10, 2021. (See **Exhibit D** p. 12 ¶ 4).

86. Hossfeld testified that the Plaintiffs are not neglectful. (See **Exhibit D** p. 16).

87. A case note entered by the caseworker on December 26, 2019, memorializes that "parties agree that have not been neglectful" referring to the Plaintiffs. Service providers agreed that M.B. needed placement. (See **Exhibit D** p. 22).

88. On March 25, 2021, Judge Mariely L. Downey determined that the Agency had not proven by a fair preponderance of the evidence that the Plaintiffs committed the maltreatment alleged. (See **Exhibit D** p. 23).

89. Judge Downey noted that even if it could be proven that the Plaintiffs failed to exercise a minimum degree of care, the Agency did not prove there was any harm to M.B. (See **Exhibit D** p. 22).

90. The Inadequate Guardianship charge stems from the Agency's accusation that the Plaintiffs failed to bring M.B. home from Family Court on December 27, 2019. (See **Exhibit D** p. 22).

91. The Plaintiffs, M.B., M.B.'s parole officer, the caseworker, and her supervisor all agreed it was a bad idea to send M.B. home with the Plaintiffs. (See **Exhibit D** p. 22).

92. Despite the Plaintiffs apprehension and fear, they did bring M.B. home from court on December 27, 2019. (See **Exhibit D** p. 22).

93. The record supports that every time M.B. ran away, the Plaintiffs called the police and searched for her. (See **Exhibit D** p. 22).

94. An investigative case note entered on December 26, 2019, reflects that all parties involved agree the Plaintiffs are not neglectful. (See **Exhibit D** p. 22).

95. A motion was brought by Debra and Jeffery Best through their counsel, Anthony Cervi, Esq., to dismiss the case bearing Family Court File No. 188709, Dkt Nos. NN-17541-19 and NN-17543-19. (See **Exhibit Q**).

96. The motion was argued on November 15, 2021, before Hon. Margaret O. Szczur.

97. On March 8, 2022, Hon. Margaret O. Szczur dismissed the case bearing Family Court File No. 188709, Dkt Nos. NN-17541-19 and NN-17543-19. (See **Exhibit R**).

98. On June 27, 2022, a Decision was issued by the Office of Children and Family Services that the report of suspected child abuse or maltreatment by the Erie County Child Protective Services was determined to be "unfounded." (See **Exhibit S**).

99. The Plaintiffs do not have contact with M.B. any longer. There was a no access order put in place on July 28, 2020. (See **Exhibit D** p. 10 ¶ 52).

100. On August 29, 2020, Mr. Best reported that he was receiving harassing phone calls from M.B. to Depew Police. M.B. admitted to making the phone calls. (See **Exhibit T**).

11

101. Mr. Best told Depew Police he was receiving text messages from M.B. saying she needed help on November 12, 2021, despite the no-contact order. (See **Exhibit U**).

### AS AND FOR A FIRST CAUSE OF ACTION:
### ABUSE OF PROCESS

102. Plaintiffs repeat and re-allege the allegations previously set forth herein, as if fully set forth once again.

103. On December 13, 2019, Defendants commenced a CPS investigation into the Plaintiffs for allegations of abuse and neglect of M.B.

104. Defendants additionally filed a Neglect and Amended Neglect Petition against the Plaintiffs on December 24, 2019, and December 31, 2019, respectively.

105. The allegations contained in the Petitions were that the physical, mental, or emotional condition of M.B. had been impaired or was in imminent danger of becoming impaired and/or is in danger of further impairment as a result of the failure of the Plaintiffs to exercise a minimum degree of care in providing M.B. with adequate food, clothing, and shelter and that Plaintiff Jeffery Best had choked/strangled M.B.

106. At the conclusion of the investigation without fair preponderance of the evidence, Defendants indicated the Neglect Petitions against the Plaintiffs.

107. Defendants continued to press for a wrongful prosecution of Plaintiffs in order to harass and inflict emotional distress and as retaliation against Plaintiffs for surrendering their rights to M.B.'s sister A.B.

108. This course of conduct started on December 13, 2019, and continued through March 25, 2021, when the Plaintiffs' neglect was properly reversed and sealed pursuant to Social Service Law § 422.

109. As a result of Defendant's conduct, Plaintiffs have sustained injuries including, but not limited to: severe mental and emotional injuries, great anxiety and distress, pain and suffering, harm and injury to their reputation, and significant legal fees.

## AS AND FOR A SECOND CAUSE OF ACTION:
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

110. Plaintiffs repeat and re-allege the allegations previously set forth herein, as if fully set forth once again.

111. Defendants had a duty to not falsely file, prosecute, and investigate the Plaintiffs with regards to the Neglect Petitions against them.

112. Defendants additionally had a duty not to retaliate against Plaintiffs for surrendering their right with regards to A.B.

113. Defendants' breaches of duty resulted in the Plaintiffs being forced to bring M.B. back into their home even though Plaintiffs were worried that M.B. would become violent towards them since she did not want to go to the Plaintiffs' home. Plaintiffs were even fearful for the safety of M.B. due her threats to run away if taken home.

114. Defendants breached both of these duties which resulted in Plaintiffs suffering emotional distress including severe mental and emotional injuries, great anxiety and distress, and pain and suffering.

## AS AND FOR THE THIRD CAUSE OF ACTION: VIOLATION
### OF CONSTITUTIONAL RIGHTS

115. Plaintiffs repeat and re-allege the allegations previously set forth herein, as if fully set forth once again.

116. That Defendants were in violation of the Civil Rights Act, 42 U.S.C. § 1983.

117. The Defendants violated the Plaintiffs' constitutional right to Due Process by arbitrarily and capriciously acting without justification for their actions.

118. The Defendants violated the Plaintiffs' constitutional right to privacy by invading Plaintiff's home, personal lives, and family without justification.

119. The Defendants violated the Plaintiffs' constitutional right to parent by interfering with their right to parent as they see fit.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in an amount which exceeds the jurisdictional limits of all other courts which might otherwise have jurisdiction, together with the costs and disbursements, and for such other and further relief as to the Court may seem just and proper.

DATED:  March 5, 2025
        Amherst, New York

_____
Steven M. Cohen, Esq.
**TIVERON LAW, PLLC**
*Attorneys for Plaintiffs*
2410 North Forest Road, Suite 301
Amherst, New York 14068
Telephone: (716) 636-7600
scohen@tiveronlaw.com

14

## VERIFICATION

STATE OF NEW YORK     )
COUNTY OF ERIE        ) SS:

    Debra Best, being duly sworn, deposes and says that they she is the Plaintiff in the foregoing claim, that she has read the foregoing Verified Amended Complaint and knows the contents thereof; that the same is true to her knowledge except as to those matters alleged to be upon information and belief as to those matters, she believes them to be true.

_____
DEBRA BEST

Sworn to before me this
5TH day of JUNE, 2025

_____
NOTARY PUBLIC

David P. Okulewicz
Notary Public, State of New York
No. 01OK6301017
Qualified in Erie County
Commission Expires April 14, 2026

1

## VERIFICATION

STATE OF NEW YORK    )
COUNTY OF ERIE       ) ,SS:

    Jeffery Best, being duly sworn, deposes and says that he is the Plaintiff in the foregoing claim, that he has read the foregoing Amended Verified Complaint and knows the contents thereof; that the same is true to his knowledge except as to those matters alleged to be upon information and belief as to those matters, he believes them to be true.

                                                                                                    JEFFERY BEST

Sworn to before me this
5TH day of JUNE, 2025

NOTARY PUBLIC

David P. Okulewicz
Notary Public, State of New York
No. 01OK6301017
Qualified in Erie County
Commission Expires April 14, 2026

2